UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARVEY SIEGEL and ROBERT
CORRAO,

                         Plaintiffs,                         16-CV-8077 (JPO)

            -v-                                              <u>OPINION AND ORDER</u>

DON RICARDO ONIEL FORD,
                         Defendant.

J. PAUL OETKEN, District Judge:

Plaintiffs Harvey Siegel and Robert Corrao bring this action against Defendant Don Ricardo Oniel Ford for common law fraud and unjust enrichment. Plaintiffs allege that Ford fraudulently induced them to enter into an option agreement to purchase the rights to his invention, Eco-Fuel Saver ("Eco-Fuel"). Ford allegedly fraudulently misrepresented to Plaintiffs that Eco-Fuel, a fuel additive, increases fuel efficiency and reduces emissions. (Dkt. No. 1 ("Compl.") ¶ 1.) In addition, Ford allegedly misrepresented that a "worldwide market" already existed for Eco-Fuel, and that he actually owned the rights to the product, despite having previously transferred worldwide distribution rights to Eco-Fuel to third-party investors. (*Id.*)

Ford moves to dismiss Plaintiffs' claims. For the reasons that follow, the motion is denied.

**I.      Background**

The following facts are taken from the complaint and are presumed true for the purposes of this motion.

Beginning in April 2014 and continuing through the summer of that year, Plaintiffs and Ford repeatedly spoke by phone about Eco-Fuel's effectiveness and the existence of a foreign market for Eco-Fuel. (*Id.* ¶ 8.) During such calls, Ford represented that he expected tens of

millions of dollars in sales across numerous countries, including the United States, Uruguay, Mexico, China, India, Jamaica, Taiwan, Thailand, Cuba, Greece, Argentina, Canada, and Mexico. (*Id.*)

On June 5, 2014, Ford sent Plaintiffs a copy of his patent for Eco-Fuel, in which he claimed:

> Mixed with the fuel employed by an engine in very small quantities, the fuel and additive mixture results in an increase in available horsepower, improved torque, and reduced fuel consumption, all while concurrently causing a substantial reduction in pollutants and greenhouse gases from the exhaust from the burned fuel . . . . Testing of the component additive invention herein has shown that engines having the additive/carrier mixture mixed with the engines' fuel, in the noted ratios, have significantly decreased gas emissions in the exhaust from the engine, and also have increased power with resulting mileage increases. Consequently, the addition of the component additive invention herein, to the fuel of vehicles, will save money over time, because of increased fuel efficiency, reduced costs for fuel, and fewer repairs to the fuel and combustion systems of the engine.

(*Id.* ¶ 9.) In reliance on these representations as to Eco-Fuel's effectiveness, Plaintiffs entered into an option agreement to purchase Eco-Fuel on June 25, 2014. (*Id.* ¶ 11; Dkt. No. 11-1 ("Option Agreement")). The Option Agreement gave Plaintiff an exclusive right to negotiate an agreement to purchase the product in exchange for $300,000.[1] (Compl. ¶ 11; Option Agreement at 5.) The Option Agreement also required Ford to make available to Plaintiffs any distribution

---

[1]    Ford takes issue with Plaintiffs' characterization of this agreement as an "option to purchase," claiming it was "really a non-binding letter of intent." (Dkt. No. 11 at 4 n.1.) Although at the motion-to-dismiss stage, courts "generally may consider only the complaint and any written instrument attached to [it]," the Court will consider the Option Agreement, which is attached to Defendant's motion to dismiss, because that document is incorporated into the complaint by reference and "no dispute exists regarding [its] authenticity, accuracy, or relevance." *Hutson v. Notorious B.I.G., LLC*, No. 14 Civ. 2307, 2015 WL 9450623, at *2 (S.D.N.Y. Dec. 22, 2015).

The Option Agreement provides Plaintiffs with an exclusive right to negotiate, for which the Plaintiffs allege they paid $300,000 in consideration. (Compl. ¶ 11; Option Agreement at 5.) Beyond his own conclusory assertions, Ford offers no reason why such an agreement would be non-binding.

agreements or testing reports pertaining to Eco-Fuel. (Compl. ¶ 12; Option Agreement at 4.) Ford never provided any such distribution agreements or testing reports, and Plaintiffs allege that none existed and that Ford had no basis for his claims about Eco-Fuel's effectiveness. (Compl. ¶¶ 10, 12.)[2]

After executing the Option Agreement, Plaintiffs retained an intellectual property attorney and began to pursue financing to bring Eco-Fuel to market. (*Id.* ¶¶ 13–14.) On July 14, 2014, at a meeting at Plaintiffs' intellectual property lawyers' office, Ford and his associate Ernie Park represented that: (1) "Eco-Fuel was so priceless . . . [that its] intellectual property . . . had to be protected in its destination markets"; (2) a market worth approximately $10 million existed for the product in 2014 in Uruguay; and (3) the market value had grown to $50-100 million in 2015. (*Id.* ¶ 14.) Later in 2015, Plaintiffs confirmed that no such established market existed. (*Id.*) In reliance on Ford's misrepresentations, however, Plaintiffs expended an additional $200,000 (*id.* ¶ 14), presumably as part of their efforts to bring Eco-Fuel to market.

On November 9, 2014, Ford provided Plaintiffs with a "Master List of Ongoing Business Opportunities" ("Master List"), which set forth existing and prospective distribution opportunities in numerous foreign countries. (*Id.* ¶ 15.) Based on this list and Ford's previous representations, Plaintiffs advanced him an additional $40,000 and continued to expend "tens of thousands of dollars . . . engaging consultants, purchasing testing equipment, and travel[ing]." (*Id.* ¶ 16.)

---

[2]     In his Reply, Ford disputes the factual allegation that he failed to provide these testing results. (Dkt. No. 17 at 4.) In support of his assertion, he attaches 20 exhibits, including e-mail correspondence between Plaintiff Siegel and himself. Unlike the Option Agreement, *see supra* note 1, the Court may not consider these documents at the motion-to-dismiss stage because they are neither matters of public record nor referenced in the complaint. *See Hutson*, 2015 WL 9450623, at *2. Contrary to Ford's argument, the Court must take all of Plaintiffs' well-pleaded allegations as true in ruling on this motion to dismiss.

Because they never received testing results from Ford, despite repeated requests, Plaintiffs eventually arranged for testing at "CNR, the largest public research institute in Italy." (*Id.* ¶ 18.) The testing indicated that Eco-Fuel produced no measureable increase in efficiency. (*Id.*) Ford blamed the poor results on "testing errors," and promised to travel to Italy to investigate and correct those errors. (*Id.*) He never did so. (*Id.*)

In or about February 2015, Ford engaged the Maine Maritime Academy to test Eco-Fuel. (*Id.* ¶ 19.) It also found no measurable improvement in fuel efficiency or reduction in emissions. (*Id.*)

Plaintiffs eventually became aware of a lawsuit in Canada arising from Ford's sale of the worldwide rights to distribute Eco-Fuel and its derivate products to Rainmaker Ventures, Inc. (*Id.* ¶ 20.) The alleged sale occurred prior to the negotiations between Ford and Plaintiffs. (*Id.*)

Plaintiffs filed a complaint against Ford on October 15, 2016, asserting two common law causes of action: fraud and unjust enrichment. (*Id.* ¶¶ 21–28.) Ford moves to dismiss on several grounds pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(e). (Dkt. No. 10.)

## II.    Standing[3]

### A.    Legal Standard

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citation omitted). "[W]here, as here, the

---

[3]    Although styled as a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Ford argues that Plaintiffs do not have Article III standing, which is properly asserted under Rule 12(b)(1). *See, e.g.*, *Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913, 2013 WL 5295089, at *4 (S.D.N.Y. Sept. 17, 2013) ("Motions to dismiss for lack of standing are decided under Rule 12(b)(1) of the Federal Rules of Civil Procedure.").

case is at the pleading stage and no evidentiary hearings have been held, . . . we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (second and third alterations in original) (quoting *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir.2001)). "[I]n resolving a motion to dismiss for lack of standing, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' but 'a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.'" *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 516 (S.D.N.Y. 2017) (citation omitted) (first quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (second quoting *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003)). "A court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits.'" *Id.* (alteration in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

B.  **Discussion**

"[A]ny person invoking the power of a federal court must demonstrate standing to do so. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citing *Lujan*, 504 U.S. at 560–61 (1992)).

Ford argues that Plaintiffs do not have standing because the Option Agreement identified "American Energy Trust, LLC [('AET')] *or its assignee*" as the "Purchaser," not Plaintiffs. (Dkt. No. 11 at 17.)  In other words, Plaintiffs have not established that they, rather than AET, have suffered a concrete and particularized injury.  Plaintiffs respond that AET was "never

formed[,] and it was only contemplated as the entity that would acquire Eco Fuel if the option was exercised." (Dkt. No. 12 at 15; *see also* Dkt. No. 13 ("Siegel Decl.") ¶ 12.) Therefore, Siegel and Corrao were the only parties to suffer an injury. (Dkt. No. 12 at 15.)

Plaintiffs have adequately alleged facts to support standing. According to Plaintiffs, AET does not actually exist, and would only have been created if they decided to exercise their option to purchase Eco-Fuel. *Cf. AdsOn5th, Inc. v. Bluefin Media, Inc.*, No. 16 Civ. 143, 2017 WL 2984552, at *7 (W.D.N.Y. July 13, 2017) (concluding a plaintiff did not have standing to bring a contract claim where the contract referred to another "specific corporation" that actually existed). The Option Agreement, into which Plaintiffs allege they were fraudulently induced to enter, was written by Siegel, in the first person "[o]n behalf of American Energy Trust, LLC," and identifies Siegel as the managing member of AET.[4] (Option Agreement at 1, 8.) *Cf. AdsOn5th*, 2017 WL 2984552, at *8 ("[T]here is the far-more-convincing evidence that Payz Online Inc.—and not the plaintiff—actually was corresponding with the defendants, sending them invoices, and seeking payment based on the terms of the contract. . . . The letters and forms all relate to whether the defendants should withhold tax when making payments to Payz Online Inc. [The plaintiff] is not mentioned in these documents . . . ." (footnoted omitted)).[5] The evidence, including the Option

---

[4] The allegations in the complaint as to Plaintiff Corrao's involvement are sparse. Nonetheless, the Court determines they are sufficient to support standing, especially in light of Siegel's averments that Corrao was his "business partner" and that Corrao paid $150,000 to Ford as consideration for the option to purchase Eco-Fuel. (Siegel Decl. ¶¶ 3, 5.)

[5] The fact that AET is not mentioned in the caption of the complaint is irrelevant to whether Plaintiffs have constitutional standing. *See Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1241 n.2 (S.D.N.Y. 1977) ("[W]hether or not Societa is in fact 'doing business as Snia Viscosa' is a matter which is not decided by plaintiff's choice of caption in his complaint.").

Agreement itself, is sufficient to establish that Plaintiffs suffered a concrete and particularized injury resulting from Ford's alleged fraudulent misrepresentations.

Defendant's motion to dismiss for lack of standing is denied.

## III.    Personal Jurisdiction

### A.    Legal Standard

"On a [Rule] 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction," *i.e.*, a prima facie showing of jurisdiction.  *Machkour v. Espices W. 70th Corp.*, No. 11 Civ. 688, 2011 WL 6288006, at *3 (S.D.N.Y. Dec. 14, 2011).  On a Rule 12(b)(2) motion, "a court may consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment."  *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).  Moreover, a court will "credit a plaintiff's averments of jurisdictional facts as true."  *Machkour*, 2011 WL 6288006, at *3 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)).  "A court will not, however, 'draw argumentative inferences in the plaintiff's favor.'"  *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008)).  "In deciding Rule 12(b)(2) motions, a court is not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

### B.    Discussion

"In both diversity and federal question cases, personal jurisdiction in federal court is determined by the laws of the forum state."  *Id.* (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).  "Accordingly, the Court must engage in a 'two-part analysis.'  First, the Court must look to the relevant jurisdictional statute of the state in which it sits: New York."

*Facchetti v. Bridgewater Coll.*, No. 14 Civ. 10018, 2015 WL 3763970, at *1 (S.D.N.Y. June 16, 2015) (citation omitted) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "Then, '[i]f the exercise of jurisdiction is appropriate under that statute, the [C]ourt must decide whether such exercise comports with the requisites of due process.'" *Id.* (alternations in original) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

### 1. Specific Personal Jurisdiction

New York's long-arm statute establishes specific personal jurisdiction over a non-domiciliary who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state" (except defamation of character); or (3) "commits a tortious act [besides defamation of character] without the state causing injury to person or property within the state."[6] N.Y. C.P.L.R. § 302(a). Plaintiffs contend that personal jurisdiction over Ford is statutorily authorized pursuant to all three avenues. The Court concludes that personal jurisdiction is proper under § 302(a)(1) because Ford transacted business within the state. Therefore, it need not reach Plaintiff's alternative arguments.

"A defendant transacts business within the meaning of § 302(a)(1) when it purposefully 'avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws.'" *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 513–14 (S.D.N.Y. 2016) (alteration in original) (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007)).

---

[6] In order to establish personal jurisdiction based on a tortious act committed without the state, a plaintiff must also show that the non-domiciliary (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3).

"Section 302(a)(1) is a 'single act' statute: '[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Id.* at 514 (alteration in original) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert*, 171 F.3d at 787. "Rule 302(a)(1) jurisdiction 'requires only a minimal quantity of activity, provided that it is of the right nature and quality.'" *Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 Civ. 1188, 2009 WL 1490852, at *6 (S.D.N.Y. May 27, 2009) (quoting *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 7821)*, 731 F. Supp. 587, 592 (S.D.N.Y. 1990)).

Here, the totality of the circumstances alleged establishes that Ford purposefully created a business relationship with Siegel, a New York resident. Ford's business relationship with Plaintiffs began in April 2014 and continued for at least ten months. (Compl. ¶¶ 8, 19.) During that period, Ford traveled to Manhattan to meet with Siegel "at least three times." (Siegel Decl. ¶ 8.) Ford does not dispute that he traveled to New York for business purposes. (*See* Dkt. No. 17 at 6–7; Dkt. No. 18 ("Ford Decl.")). Furthermore, Ford admits that, on February 15, 2014, he "sent 36 five-ounce bottles of Eco-Fuel Saver[] to Siegel at no charge," because he believed Siegel was a "potential distributor." (Ford Decl. ¶ 13.) Plaintiffs also claim that they repeatedly discussed the allegedly misrepresented testing results and foreign markets for Eco-Fuel over the phone with Ford, "as many as three times a day," starting in April 2014. (Comp. ¶ 8.) Finally, the scope of the alleged business relationship between the parties was substantial: Plaintiffs

claim to have paid $340,000 to Ford directly and expended and additional $200,000 in pursuit of their investment in Eco-Fuel.  (Compl. ¶ 22).

Considering the totality of the circumstances alleged, the Court concludes that Ford purposefully transacted business in New York, and specific personal jurisdiction is proper under N.Y. C.P.L.R. § 302(a).[7]  *See Minnie Rose*, 169 F. Supp. 3d at 513–14 (determining that a purposeful business relationship was created where: parties had a five-year business relationship, including $1.4 million in commission payments; Defendant came to New York to discuss business on three occasions and regularly communicated over e-mail and telephone; Defendant made monthly shipments of clothing to Plaintiff in New York; and Defendant sent allegedly fraudulent invoices to Plaintiff in New York); *see also Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11 Civ. 1616, 2011 WL 5838697, at *10 (S.D.N.Y. Nov. 21, 2011) ("[C]ourts in this district have found personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years.").[8]

### 2.    Constitutional Personal Jurisdiction

"Having found that § 302(a)(1) confers jurisdiction over Defendants, the Court must examine whether its assertion of personal jurisdiction comports with due process."  *Minnie Rose*, 169 F. Supp. 3d at 515.  "Due process demands that defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of

---

[7]     Because the Court concludes the specific personal jurisdiction is authorized by New York's "long-arm statute," it need not address whether it has general personal jurisdiction over Ford.

[8]     The Court sees no reason why a substantial business relationship that lasted eight months, rather than a period of years, and involved multiple meetings in New York and phone conversations in which Ford allegedly made fraudulent misrepresentations to a New York plaintiff, would not similarly support personal jurisdiction under N.Y. C.P.L.R. § 302(a).

fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316

(1945)). "The due process inquiry has two parts: (1) 'the court must determine whether the

defendant has sufficient contacts with the forum state to justify the court's exercise of personal

jurisdiction,' and (2) 'the court must determine whether the assertion of personal jurisdiction is

reasonable under the circumstances of the particular case.'" *Id.* (quoting *Schottenstein v.

Schottenstein*, 04 Civ. 5851, 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004)).

"The requisite 'minimum contacts' analysis 'overlaps significantly' with New York's

§ 302(a)(1) inquiry into whether a defendant transacted business in the State." *Id.* (quoting

*Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014)). Accordingly, based on

the above analysis under § 302(a)(1), the Court concludes that the "minimum contacts"

requirement is satisfied here. *See id.*

"Part two of the due process inquiry—the reasonableness of a Court's assertion of

personal jurisdiction—depends on a consideration of '(1) the burden that the exercise of

jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the

case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient

resolution of the controversy; and (5) the interests of the state in furthering substantive social

policies.'" *Id.* (quoting *Schottenstein*, 2004 WL 2534155, at *8). Where, as here, a plaintiff has

made a threshold showing of minimum contacts, however, "a defendant must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable." *Id.* (quoting *Bank Brussels Lambert*, 305 F.3d at 129).

Ford has not presented a compelling case that it would be unreasonable for this Court to

assert personal jurisdiction over him. In contesting the reasonableness of such jurisdiction, Ford

merely disputes the veracity of Plaintiffs' factual allegations regarding the existence of out-of-

state witnesses and whether any allegedly misleading statements before execution of the Option Agreement occurred within New York. (Dkt. No. 17 at 7.) At this stage, however, the Court takes the Plaintiffs' "averments of jurisdictional facts as true." *See Machkour*, 2011 WL 6288006, at *3 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 206).

The Court must next consider the five reasonableness factors. As to the first, even if the Court credits Ford's conclusory assertion that "it would impose a substantial burden for him to litigate in New York"[9] (Dkt. No. 11 at 13), "a 'generalized complaint[] of inconvenience' . . . is an insufficient basis upon which to defeat a finding of personal jurisdiction." *Melissa & Doug, LLC v. LTD Commodities, LLC*, No. 15 Civ. 8085, 2016 WL 4367975, at *5 (S.D.N.Y. Aug. 15, 2016) (alteration in original) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010)). "Second, New York has a strong interest in adjudicating cases of alleged fraud perpetrated against New York [plaintiffs]." *Minnie Rose*, 169 F. Supp. 3d at 516 (emphasis omitted). Third, Plaintiff Siegel has a "strong interest in efficiently adjudicating this matter in New York." *Id.* Fourth, litigation in California would not necessarily lead to a more "efficient resolution of the controversy": despite disputing Plaintiffs' claim that they are not aware of any witnesses besides Ford who reside in California (*see* Siegel Decl. ¶ 13), Ford only identifies one additional potential witness who he claims resides in California (*see* Dkt. No. 17 at 7). Fifth, and finally, Ford "do[es] not assert, nor can the Court discern, any substantive social policies that would be furthered" by requiring this case to be heard in California. *See Minnie Rose*, 169 F. Supp. 3d at 516.

---

[9] The Court is skeptical that any burden on Ford is actually substantial. *See Minnie Rose*, 169 F. Supp. 3d at 515–16 ("[T]he 'conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'") (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573–74 (2d Cir. 1996)).

The Court concludes that its assertion of personal jurisdiction over Ford comports with the dictates of due process. Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

## IV. Venue

### A. Legal Standard

Ford moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). "In evaluating a motion to dismiss for improper venue under Rule 12(b)(3), the court 'must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.'" *Cavu Releasing, LLC. v. Fries*, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005) (quoting *Dolson v. N.Y. State Thruway Authority,* No. 00 Civ. 6439, 2001 WL 363032, at *1 (S.D.N.Y. Apr. 11, 2001)). "However, the plaintiff bears the burden of showing that venue is proper in the forum district." *Id.* "[C]ourts may consider materials outside the pleadings on a motion to dismiss for improper venue." *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005).

### B. Discussion

"Under 28 U.S.C. § 1391, venue is proper in any judicial district in which 'a substantial part of the events or omission giving rise to the claim occurred.'" *Gruntal & Co. v. Kauachi*, No. 92 Civ. 2840, 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993) (quoting 28 U.S.C. § 1391).

Here, Plaintiffs have adequately alleged that a substantial part of the events giving rise to their claims occurred in this District. Specifically, Siegel avers that he had "numerous telephone conversations with Ford" about Eco-Fuel's efficacy and existing foreign distribution networks from his office in Manhattan. (Siegel Decl. ¶ 3.) Venue is proper on the basis of these alleged phone conversations alone. *See Gruntal & Co.*, 1993 WL 33345, at *1–2 (concluding that venue was proper in common law fraud action based on telephone calls during which allegedly

fraudulent representations were made, where one party to the calls was within the district during calls). In addition to these calls, Ford allegedly sent several packages of Eco-Fuel and the patent application to Siegel in New York, and he met with Siegel three "at least three times in Manhattan." (Siegel Decl. ¶ 8.) Because a substantial part of the action giving rise to Plaintiffs' claim occurred in the Southern District of New York, the motion to dismiss for improper venue is denied.

## V.    Forum Non Conveniens

Ford also moves to dismiss "on the grounds of forum *non conveniens*." (Dkt. No. 11 at 22.)

First, the Court notes that the common law doctrine of *forum non conveniens* is inapplicable to the present case. 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented," displaced "the common law doctrine of *forum non conveniens* for transfers between United States district courts." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998).

Second, even if the Court were to construe Ford's motion to dismiss as a motion under § 1404(a) to transfer to (an unidentified district) in California, it concludes that the standard under that statute is not satisfied. Under § 1404(a), "the 'threshold question,' when determining whether transfer is appropriate, is whether the action *could* have been brought originally in the transferee forum." *Berger v. Cushman & Wakefield of Pennsylvania, Inc.*, No. 12 Civ. 9224, 2013 WL 4565256, at *3 (S.D.N.Y. Aug. 28, 2013) (quoting *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009)). "After a court determines that the

action could have been permissibly brought in the transferee forum within the strictures of 28 U.S.C. § 1391(b), it then must examine whether convenience and the interests of justice warrant a transfer." *Id.* (footnote omitted) (citing *Eslworldwide.com, Inc. v. Interland, Inc.*, No. 06 Civ. 2503, 2006 WL 1716881, at *3 (S.D.N.Y. June 21, 2006)). This inquiry is guided by several factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* (quoting *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). "To this basic structure, other factors have been added to reflect a careful balancing among the interests at stake in a given litigation." *Id.*; *see also Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) ("Assessing whether transfer is a valid exercise of discretion requires the Court to balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.").

Here, Ford's motion fails at the threshold because he has not met his burden to establish that this action could have been brought in another district under 28 U.S.C. § 1391(b). "It is well settled that 'the burden is on the defendant, when it is the moving party to establish that there should be a change of forum.'" *Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1271 (S.D.N.Y. 1995) (quoting *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)). Presumably, venue might be proper in *some* district in California, the state in which Ford

allegedly resides.  (Compl. ¶ 7.)  But Ford does not specifically identify this district.  (*See* Dkt. No. 11 at 22–23.)

The motion to "dismiss on *forum non conveniens*" grounds or to transfer under § 1404(a) is therefore denied.

## VI.     Failure to State a Claim

Ford also appears to argue that Plaintiffs' claims should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b), although he styles this argument as a "motion to dismiss for a more definite statement" under Rule 12(e).[10]  (Dkt. No. 11 at 18.)

### A.     Legal Standard

"In considering a motion to dismiss for failure to state a claim, the Court accepts as true all allegations in the complaint and draws all reasonable inferences in Plaintiff's favor." *Guerrero v. City of New York*, No. 16 Civ. 516, 2017 WL 2271467, at *1 (S.D.N.Y. May 23,

---

[10]     "Rule 12(e) provides '[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.'" *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001) (quoting Fed. R. Civ. P. 12(e)).  "Rule 12(e) applies only in limited circumstances":

> The pleading must be sufficiently intelligible for the district court to make out one or more potentially viable legal theories on which the claimant might proceed; in other words, the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 443 (S.D.N.Y. 2005) (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1376 at 311 (3d ed.2004)).

For the same reasons given below for denying Ford's motion to dismiss for failure to state a claim, his motion for a more definite statement is also denied.

2017) (citing *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)). "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

"To state a claim for fraudulent misrepresentation under New York law 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). In addition, Plaintiffs' "common law fraud claims are subject to the Rule 9(b) pleading requirements." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014) (quoting *Banque Arabe*, 850 F.Supp. 1199, 1221 (S.D.N.Y.1994)), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016)). Rule 9(b) requires "that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"While the circumstances of fraud must be pleaded specifically, fraudulent intent may be averred generally, as long as the complaint provides a factual basis that gives rise to a strong

inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."

*Trs. of Plumbers & Pipefitters Nat. Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342, 346–47 (S.D.N.Y. 1995). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir. 1993)).

### B.   Discussion

#### 1.   Count I: Common Law Fraud

Plaintiffs' complaint adequately states a claim for common law fraud under New York law. First, it alleges that specific false representations about Eco-Fuel's efficacy were made on June 5, 2014, when Ford sent Plaintiffs the Eco-Fuel patent. (Compl. ¶ 9.) It further alleges that subsequent testing revealed the falsity of these representations. (*Id.* ¶¶ 18–19.) Second, it identifies another specific fraudulent statement about the existence of foreign markets for Eco-Fuel, which were made by Ford and his associate, Ernie Park, at the July 4, 2014, meeting at Plaintiffs' attorney's office in New York City. (*Id.* ¶ 13.) Similarly, it alleges that, on November 9, 2014, Ford provided Plaintiffs with the "Master List" of existing and prospective foreign business opportunities for distributing Eco-Fuel. (*Id.* ¶ 15.) According to Plaintiffs, their representative later confirmed that no such established markets existed.[11] (*Id.* ¶ 13.)

---

[11]    Plaintiffs also claim that each and every one of Ford's representations that he owned Eco-Fuel and could sell the rights to its distribution to Plaintiffs were knowingly false. (Compl. ¶ 20.) They allege that Ford had previously sold the worldwide distribution rights to another corporation prior to entering into negotiations with Plaintiffs, and that this prior sale led to a separate lawsuit in Canada. (*Id.*) This particular misrepresentation, however, is not alleged with adequate specificity. Plaintiffs do not identify a specific time or place where Ford made such a misrepresentation about the nature of his ownership interest in the distribution rights.

These allegations adequately identify the "who, what, where, when and why" of the allegedly fraudulent statements, so as to provide Ford sufficient notice of Plaintiffs' claims. *Jovel v. i-Health, Inc.,* No. 12–CV–5614, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013). "Rule 9(b) generally requires that a plaintiff specify . . . which statements were fraudulent and why, who made the statements to whom, and when and where the statements were made." *Id.*; *accord O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) ("The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990))); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13 Md. 2450, 2015 WL 7018369, at *12 (S.D.N.Y. Nov. 12, 2015) (citing *Jovel*, 2013 WL 5437065, at *11).

Plaintiffs also adequately allege the remaining elements of common law fraud: scienter, justifiable reliance, and damages. With respect to scienter, the allegations in the complaint, when taken as true, permit the inference that Ford either knowingly or recklessly misrepresented the effectiveness of Eco-Fuel. The complaint establishes that Ford repeatedly represented (in his patent, for example) that Eco-Fuel effectively improved fuel efficiency and reduced emissions. (Compl. ¶¶ 8, 9.) The allegations also establish that Ford failed to make available to Plaintiffs either testing reports verifying these claims or existing distribution agreements, despite Plaintiffs' repeated demands for such documentation and Ford's promise to provide it in the Option Agreement. (*Id.* ¶¶ 12, 17; Option Agreement at 4.) This alleged conduct provides

Nonetheless, Plaintiffs' fraud claim survives the motion to dismiss on the basis of the other, adequately pleaded misrepresentations.

sufficiently strong evidence that Ford did not have any such reports or distribution agreements, and that he knowingly misrepresented the efficacy of Eco-Fuel and the existence of foreign distribution markets to Plaintiffs.

Plaintiffs' allegations are likewise sufficient to establish justifiable reliance, despite Ford's argument to the contrary. Ford contends that Plaintiffs are sophisticated investors who essentially failed to exercise due diligence before entering into the Option Agreement. (Dkt. No. 17 at 8–10.)

"Reliance, which is a crucial element of any fraud claim, must be justifiable under the circumstances." *SKR Res., Inc. v. Players Sports, Inc.*, 938 F. Supp. 235, 240 (S.D.N.Y. 1996). "Courts have repeatedly rejected claims of justifiable reliance where the representation relates to matters not peculiarly within the Defendant's knowledge and the Plaintiff 'has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation.'" *Id.* (quoting *Mallis v. Bankers Tr.*, 615 F.2d 68, 80–81 (2d Cir. 1980)). Under New York law, "a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties." *UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*, 733 N.Y.S.2d 385, 386 (N.Y. App. Div. 1st Dep't 2001).

In other words, "a plaintiff suing for fraud (and particularly a sophisticated plaintiff . . .) must establish that it 'has taken reasonable steps to protect itself against deception.'" *Basis Yield Alpha Fund Master v. Stanley*, 23 N.Y.S.3d 50, 55 (N.Y. App. Div. 1st Dep't 2015) (quoting *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 154 (2010)). The ultimate question is whether, in light of the circumstances, a plaintiff has exercised due diligence. *See Miller v. Icon*

*Grp. LLC*, 911 N.Y.S.2d 3, 4–5 (N.Y. App. Div. 1st Dep't 2010) ("Defendant, a sophisticated real estate entity represented by counsel, could not establish justifiable reliance since it did not undertake due diligence concerning a matter it regarded as essential to the transaction and was not peculiarly within its knowledge."). "Under New York's contextual approach, '[t]he question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive.'" *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 643 (S.D.N.Y. 2015) (alteration in original) (quoting *DDJ Mgmt.*, 15 N.Y.3d at 155). "[R]easonable reliance is therefore a question normally reserved for the finder of fact and not usually amenable to summary judgment." *Id.* (alteration in original) (quoting *Coraud LLC v. Kidville Franchise Co.*, 121 F. Supp. 3d 387, 394 (S.D.N.Y. 2015)) (internal quotation marks omitted).

Here, the Plaintiffs adequately allege that, although they are sophisticated, they did not fail to exercise due diligence. First, the contents of any testing reports about Eco-Fuel's efficacy and the existence of distribution networks for the product were "peculiarly within the Defendant's knowledge," as the inventor of the product. *See SKR Res.*, 938 F. Supp. at 240. Second, under the terms of the Option Agreement, Ford promised to provide such reports and agreements. (Option Agreement at 4.) When they executed the Option Agreement, as alleged in the complaint, Plaintiffs had no reason to believe that such documentation did not exist, and they justifiably relied on Ford's representations, especially those in the Eco-Fuel patent. (Compl. ¶ 9). *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 496 (S.D.N.Y. 2012) ("[E]ven sophisticated plaintiffs are not required as a matter of law to 'conduct their own audit' or 'subject [their counterparties] to detailed questioning' where they have

bargained for representations of truthfulness." (second alteration in original) (quoting *DDJ Mgmt.*, 15 N.Y.3d at 148)).[12]

Plaintiffs may be sophisticated investors, but that does not make them sophisticated engineers. Ford does not identify any available "means of verification" of which Plaintiffs failed to avail themselves. *See De Sole*, 139 F. Supp. 3d at 643 (quoting *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 703 (S.D.N.Y. 2013)). Viewing the alleged facts in the light most favorable to Plaintiffs, the Court concludes that they justifiably relied on Ford's alleged misrepresentations.[13]

## 2. Count II: Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). "New York courts 'look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.'" *MCM Prods. USA, Inc. v. Botton*, No. 16 Civ. 1616, 2016 WL 5107044, at *8 (S.D.N.Y. Sept. 19, 2016) (quoting *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

---

[12]     Of course, Plaintiffs' bargained-for right to disclosure of truthful information from Ford applies only to representations that occurred after execution of the Option Agreement. Nonetheless, the Court concludes that the Plaintiffs have adequately pleaded justifiable reliance as to the pre-execution fraudulent misstatements as well, for the reasons given above.

[13]     Plaintiffs also adequately allege damages, the final element of a fraud claim. They claim to have expended $300,000 to purchase the option to exclusively negotiate for the rights to Eco-Fuel, $200,000 in additional costs in preparation to bring the produce to market, and $40,000 more in an advance payment to Ford. (Compl. ¶¶ 11, 14, 16.) Ford does not contend that damages are not adequately alleged.

Here, all three elements are sufficiently alleged. Plaintiffs claim to have paid $540,000 to Ford. (Compl. at 7.) Assuming the truth of Plaintiff's allegations of fraudulent misrepresentations, "equity and good conscience militate against permitting defendant to retain" these funds. *See MCM*, 2016 WL 5107044, at *8.

The motion to dismiss for failure to state a claim is denied.[14]

**VII. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendant shall file an answer to the complaint on or before October 5, 2017.

The Clerk of Court is directed to close the motion at Docket Number 10.

SO ORDERED.

Dated: September 15, 2017
New York, New York

J. PAUL OETKEN
United States District Judge

---

[14] Ford's statute of limitations argument is meritless. (Dkt. No. 11 at 21–22.) He claims that the statute of limitations is "*two years* from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." (*Id.* at 21) (emphasis in original) (quoting N.Y. CPLR § 213(8)). As Plaintiffs point out, however, Ford's position wholly ignores the complete text of the statute, which provides that, for "an action based upon fraud":

the time within which the action must be commenced shall be the *greater of six years from the date the cause of action accrued or* two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

N.Y. CPLR § 213(8) (emphasis added). Because the alleged fraud began in 2014, Plaintiffs' claims are timely. (*See* Dkt. No. 12 at 13–14.)